IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHAUNTEZ HAIRSTON,　　　　)
　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　)
　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　)　　Case No. 07-cv-0445-MJR-DGW
　　　　　　　　　　　　　　)
MIKAL MILTON,　　　　　　　)
　　　　　　　　　　　　　　)
　　　　　Defendant.　　　　)

## MEMORANDUM AND ORDER

Reagan, District Judge:

　　A.　　Introduction

　　Shauntez Hairston, a detainee at St. Clair County (Illinois) Jail, filed a civil right suit in this Court two year ago under 42 U.S.C. § 1983. Hairston complained that Mikal Milton, a corrections officer at the County Jail, beat and used excessive force against him, thereby violating rights secured to Hairston by the federal constitution. Hairston's pro se complaint prayed for $200,000 in damages (for emotional distress), $1,000,000 (in pain and suffering), and the transfer of Milton to another "department" (Doc. 1, p. 6).

　　The case survived threshold review in January 2008[1], preliminary motions were filed and ruled on, and Hairston filed an amended complaint. Milton answered the amended complaint, and a Scheduling Order was entered

---

[1] The St. Clair County Sheriff's Department was dismissed via the January 2008 Order on threshold review, leaving Officer Milton as the sole Defendant herein.

in July 2008. Additional motions followed.

In November 2008, the Magistrate Judge assigned to the case (the Honorable Donald G. Wilkerson) appointed counsel for Hairston (attorney Stephen D. Smith), and entered an amended Scheduling Order to permit additional discovery, as well as the filing of fresh dispositive motions. The schedule was extended again in January 2009 (see Doc. 49).

With leave of Court, Hairston filed a second amended complaint on June 1, 2009. That amendment did not moot a freshly-filed but (at that time) not fully-briefed summary judgment motion. The summary judgment motion, filed by Plaintiff Hairston and responded to by Defendant Milton (Docs. 56 & 63), comes now before the Court.

For the reasons explained below, the undersigned District Judge DENIES the motion.

B. Applicable Legal Standards

Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. **Breneisen v. Motorola, Inc.**, 512 F.3d 972 (7th Cir. 2008), **citing** Fed. R. Civ. P. 56(c), **Celotex Corp. v. Catrett**, 477 U.S. 317, 322-23 (1986), and **Krieg v. Seybold**, 481 F.3d 512, 516 (7th Cir. 2007). **Accord Levy v. Minnesota Life Ins. Co.**, 517 F.3d 519 (7th Cir. 2008).

In ruling on a summary judgment motion, this Court must view the evidence and all inferences reasonably drawn from the evidence in the light

most favorable to the non-moving party. ***TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.***, 491 F.3d 625, 630 (7th Cir. 2007); ***Reynolds v. Jamison***, 488 F.3d 756, 764 (7th Cir. 2007).

However, the nonmovant "must present specific facts showing that there is a genuine issue for trial," ***Jordan v. Summers***, 205 F.3d 337, 247 (7th Cir. 2000). And the Court can find a genuine issue of material fact "only if sufficient evidence favoring the nonmoving party exists [which would] permit a jury to return a verdict for that party." ***Argyropoulos v. City of Alton***, 594 F.3d 724, 732 (7th Cir. 2008), *quoting* ***Sides v. City of Champaign***, 496 F.3d 820, 726 (7th Cir. 2007). The Court now turns to the standards governing Hairston's claim in this case and what the record contains regarding his claim.

Hairston was (and is) a pretrial detainee at a county jail, *not* a prisoner who has been sentenced to serve time in a penal institution. The United States Court of Appeals for the Seventh Circuit has explained that although the Eighth Amendment to the United States Constitution does not apply to pretrial detainees, "pretrial detainees are entitled to *at least* as much protection as the constitution provides convicted prisoners." ***Board v. Farnham***, 394 F.3d 469, 477-78 (7th Cir. 2005).

Seventh Circuit opinions have looked to Eighth Amendment standards when analyzing deliberate indifference and excessive force claims brought by detainees. In ***Wilson v. Williams***, 83 F.3d 870, 876-77 (7th Cir.

**1996),** the Seventh Circuit reasoned:

> Between the status of free citizen and convicted prisoner lies the "pretrial detainee," protected by the due process clause of the Fourteenth Amendment.... Since this protection necessarily extended beyond the prohibition of merely "cruel and unusual" punishment, pretrial detainees must arguably be afforded a higher standard than that provided by the Eighth Amendment..., at least for claims that deal with things other than conditions of confinement....
>
> Whether the standard for excessive force claims is the "reasonableness" standard of the Fourth Amendment, or some other intermediate standard, the Supreme Court has declined to say. *Graham* [v. Connor]*,* 490 U.S. [386 (1989)], at 395 n. 10..., [but] ...
>
> "most of the time the propriety of using force on a person in custody pending trial will track the Fourth Amendment: the court must ask whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them."

The Court then noted that it was appropriate to use a variety of factors borrowed from *Fourth Amendment* excessive force cases to assess the officer's intent in a pretrial detainee's Eighth Amendment case, such as the need for the application of force and the threat reasonably perceived by the officer. **Wilson, 83 F.3d at 876, *citing Hudson v. McMillian*, 503 U.S. 1 (1992).**

> In *McMillian*, **503 U.S. at 6-7,** the Supreme Court declared:
>
> we hold that whenever prison officials stand accused of excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously

or sadistically to cause harm.

The Seventh Circuit similarly has held in an excessive force claim arising in the Eighth Amendment context that the "central question" is whether force was used in a good faith effort to restore order or sadistically to harm the plaintiff. ***Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004).**

Furthermore, the Court pointed to the relevant factors which guide that determination, "including the need for the application of force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to the inmate." ***Id.*, citing *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 1999).** We now apply these standards to the motion *sub judice.*

C. <u>Analysis</u>

Hairston asserts that he is entitled to summary judgment because Defendant Milton "maliciously used excessive force" against him, and Milton is "not protected from liability on the basis of qualified immunity" due to his intentional use of that force (Doc. 56, p. 1). Hairston tenders 136 pages of material in support of this argument and maintains that the record contains no genuine issue of material fact for trial. The Court disagrees.

Analysis begins with the underlying facts. The Court must view the evidence before it and all reasonable inferences derived therefrom in the light *most favorable to Defendant Milton*, the nonmovant.

Defendant Milton and Scott Sheldon worked as correctional officers at St. Clair County Jail. On June 14, 2007, Milton and Sheldon were escorting Hairston and 13 other detainees to the St. Clair County Courthouse. Each of these detainees was restrained with handcuffs which were attached to a waist-belt. While at the courthouse, the detainees also wore ankle shackles.

Prior to this date, a detainee named Dannie Wiley attacked and injured Hairston, resulting in Hairston being hospitalized. Following that attack, the jail issued a "keep separate" order for Hairston and Wiley, to minimize or prohibit contact between the two men. A keep separate order means detainees cannot be housed in the same block together or be scheduled for use of the same jail recreational facility at the same time.

On June 14, 2007, Wiley and Hairston were transported together to the St. Clair County Courthouse, along with 12 other detainees (including Pfinas Arnold). All went smoothly on the way to the courthouse and through the court appearances. But a problem arose while riding the elevator to the basement to leave the building and return to the jail.

Wiley was placed on the far wall of the elevator in the corner, and Hairston was in the front of the elevator right next to Officer Milton, closest to the elevator doors. The other detainees were positioned in between and around Wiley and Hairston. All detainees and Officer Milton stood in very close proximity to one another. Milton was armed with a gun. Although the detainees each wore handcuffs and ankle shackles, the detainees were not

shackled to one another.

At some point, Hairston quickly moved from his position next to the elevator doors back toward the corner where Wiley stood. Officer Milton yelled at Hairston: "Hey, what are you doing? Get back here!" This did not resolve the situation. Ultimately, Officer Milton struck Hairston several times with his elbow. Milton's use of force left Hairston with injuries above his right eye, on his forehead and his face. Hairston was treated by a licensed practical nurse (LPN) at the jail's medical facility.

Hairston's account of his actions in the elevator, the extent of the force used on him, the duration of the "attack," and the severity of the injuries he suffered differs substantially from Defendant Milton's. Photographs and "medical progress notes" from LPN Kellye Zeiger document some of the injuries. Detainee Arnold's deposition testimony supports portions of Hairston's account. Arnold's deposition testimony also buttresses *Officer Milton*'s account as to certain of Hairston's actions in the elevator. Arnold recalled Hairston "moving at an accelerated pace" (Doc. 63-4, p. 4) past other detainees to get at Wiley.

When the elevator doors opened in the basement, two bailiffs (Savage and Wright) assisted in removing Hairston and taking him to the sallyport area. Bailiff Scott Wright testified in his May 2009 deposition that he saw Hairston squirming, resisting, and disregarding commands from Officer Milton to get off the elevator. Hairston maintains that, when the elevator

doors opened in the basement, Milton grabbed Hairston, slung him into a wall, and then banged Hairston's head against the wall. Milton's deposition testimony flatly contradicts this and indicates that Hairston was not roughed up or hit after departing the elevator.

So there are varying accounts on key points in the chronology, including exactly what Hairston did in the elevator, how Milton responded to that conduct, and what occurred when the men moved off the elevator in the courthouse basement.

More specifically, questions linger regarding the number of times Milton hit Hairston (Milton says three times, Hairston suggests over twice that), the amount of resistance Hairston was exerting against Milton (Milton recounts considerable resistance, while Hairston contends he did not physically resist Milton *at any point* on the elevator or outside the elevator), and the type of restraints on Hairston at the time of the incident.

As to the latter point, Hairston insists he was restrained with a "black box," which he describes as a device placed over the handcuff chain to form a rigid link between the two handcuff wristlets (Doc. 57, p. 1). Officer Milton testified that not only was Hairston *not* black-boxed on the day in question, but Milton had never used one in the jail, and Milton had never seen *any* jail personnel restrain a detainee with a black box (Doc. 63-2, pp. 30-31).

Hairston's range of motion is relevant to the level of threat Officer Milton reasonably perceived. Hairston maintains that he was unable to move

his hands more than an inch in each direction from the "box," but Officer Milton testified that Hairston wore no box and could move his hands around his waist and crotch area freely. In fact, according to Milton, Hairston had enough range of motion to grab Milton's weapon (Doc. 63-2, pp. 33-35).

Furthermore, the record contains evidence that Officer Milton had cause to perceive a significant threat from Hairston. First, it appeared to Milton that Hairston had pulled something from his crotch area as he dropped down and lunged toward Wiley, possibly a shank. Second, Milton was afraid for his safety and indeed "feared for his life," because he knew that Hairston previously had plotted to escape the county jail by cutting correctional officers with razor blades. Additionally, Milton thought it was possible that Hairston (who had incited the confrontation) would try to grab the weapon on Milton's hip to use against Wiley or Milton.

Stated simply, fact questions exist which are material to deciding whether Officer Milton used force in a good-faith manner to restore order or, instead, maliciously and sadistically to inflict pain on Hairston. Construing the evidence and reasonable inferences in the light most favorable to Defendant Milton (the nonmovant), "there remain sufficient factual questions to reach a jury." ***Abdullahi v. City of Madison*, 423 F.3d 763, 770 (7th Cir. 2005).**

Because the excessive force reasonableness inquiry "nearly always requires a jury to sift through disputed factual contentions," the Seventh Circuit "has held on many occasions that summary judgment ... in excessive

force cases should be granted sparingly." *Id.* **at 773.** That rule applies here as well. In the case at bar, genuine issues of material fact remain which preclude the entry of summary judgment in Hairston's favor.

D. Conclusion

For all these reasons, the Court DENIES Plaintiff's motion for summary judgment (Doc. 56).

The deadline for filing all dispositive motions (which was extended twice, see Docs. 28, 45, 49) has expired.

The Honorable Donald G. Wilkerson will conduct a Final Pretrial Conference at **2:00 pm on September 9, 2009**, after which he will certify the case trial-ready. At that point, the undersigned District Judge (who intends to permit no further extensions of any deadlines herein) will assign this case a firm trial date.

The first available trial slot on this Judge's docket is **9:00 a.m. on Monday, January 4, 2010.** However, the parties are free to consent to trial before Magistrate Judge Wilkerson, who enjoys a more flexible trial schedule, likely has an earlier trial opening on his docket, and can usually accommodate an agreed-upon trial date.

Finally, because the docket sheet does not reflect that consent forms were provided to all parties, the undersigned Judge DIRECTS the Clerk of Court to furnish them by mail to all counsel of record.

The consent form also can be found under the "FORMS" link on the District Court website at www.ilsd.uscourts.gov.  The parties are free to withhold consent without adverse consequence.

IT IS SO ORDERED.

DATED this 30th day of July 2009.

s/ Michael J. Reagan<br>
MICHAEL J. REAGAN<br>
United States District Judge