IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAUNTEZ HAIRSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 07-cv-0445-MJR-DGW |
| | ) |
| MIKAL MILTON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Reagan, District Judge:

For the reasons stated below, the Court **DISMISSES** this case with prejudice and cancels all settings herein.

This lawsuit involves an excessive force claim brought by a pretrial detainee (Shauntez Hairston) against a corrections officer at the St. Clair County Jail (Mikal Milton). It was scheduled to commence jury trial on February 1, 2010. On January 19, 2010, Defendant Milton filed a motion for sanctions (Doc. 110), seeking dismissal of this case based on a document just received via supplemental discovery disclosure made by Plaintiff's counsel.[1] The document in question purported to be the affidavit of Lieutenant Regina Ray, a supervisor and one of four shift commanders at St. Clair County Jail. The *original* of the affidavit was produced to defense counsel via U.S. Mail on January 15, 2010, prompting the January 19th motion for sanctions.

---

[1] The record indicates that the supplemental discovery disclosure to which the "Ray Affidavit" was attached was emailed to defense counsel on January 4, 2010.

Plaintiff's appointed counsel filed a written response to the motion. The Court held a hearing on January 22, 2010, after securing the appearance of both Plaintiff Hairston and Lt. Ray. Having reviewed the parties' briefs, conducted a hearing, received live testimony, heard extensive argument of counsel, and assessed the documentary evidence in the record (including the affidavit in question and other affidavits prepared or submitted by Plaintiff Hairston), the Court concludes that dismissal is warranted.

The undersigned Judge is utterly convinced that the document in question (the Ray Affidavit, Exhibit 1 from the 1/22/10 hearing) was fraudulently prepared and/or altered by Plaintiff Hairston and that Hairston did this intentionally – not by accident or mistake. The affidavit relates to a central, indeed *the* central, issue in the case – whether Defendant Milton used excessive force against Hairston on June 14, 2007.

Hairston admits that he prepared the Ray Affidavit, that it is written in his own hand, and that he wrote the word AFFIANT on the document. He claims that prior to preparing the affidavit, he had a "meeting" with Lt. Ray, that he asked her if she would "write an affidavit" for him after he was "beat up by Milton." Hairston testified that Lt. Ray agreed that if Hairston wrote the affidavit up, she would sign it.

Hairston testified that he drafted the Ray Affidavit, scratched through and corrected several errors, and sometime later, presented it to Lt. Ray at her office, where she willingly signed *and then notarized* the document. Hairston testified that he later added the word AFFIANT under Ray's signature.

Hairston's testimony lacks credibility, his version of events is far-fetched,

and the Court rejects it outright for several reasons. First, Lt. Ray – a well-educated, college graduate who has worked at the jail for 24 years as a supervisor and shift commander – convincingly testified that she has not and would never draft, prepare, or sign an affidavit on behalf of an inmate or detainee. To do so would violate strict rules and policies at the jail, thereby jeopardizing her job.

Second, the contents of the Ray Affidavit bolster this conclusion. The affidavit flatly states that "Officer Michael Milton used excessive force against Hairston." It defies logic that a shift commander would give testimony against a fellow corrections officer at her own jail, in the midst of a lawsuit over the incident in question. Nor is it logical that Lt. Ray would rush to the aid of detainee Hairston, who had filed multiple complaints and at least one lawsuit against *her*. *See Hairston v. Cole, et al.,* Case No. 08-cv-0569-MJR-PMF, S.D. Illinois.

The Court **finds believable and credits** the testimony of Lt. Ray that she would not sign an affidavit like this on behalf of an inmate/detainee, that she *did not* sign this affidavit for Hairston, that she never met with Hairston, and that she never promised or offered to sign any affidavit he wrote for her. The Court also credits the testimony of Lt. Ray that, as a notary, she would never notarize her own signature. She has known since she first became a notary (sometime around 2004) that to do so would contravene notary practice guidelines/rules.

The Court also **finds believable and credits** the testimony of Lt. Ray that she would have noticed, and would have *refused to notarize*, any document with a

prominent *blank line* in the first paragraph and *her name* prominently written:

"I, Regina Elaine Ray, First being sworn under the penalty of Perjury,..."

This further supports the conclusion that the Ray Affidavit is a fraudulent or altered document.[2] Additionally, the record before this Court contains numerous other affidavits submitted by Mr. Hairston, a frequent litigant in this District (*see, e.g.,* Exhibits 2, 3 & 4 from the 1/22/10 hearing) . Those affidavits follow a fairly standard format and lay-out, none of which matches or resembles the Ray Affidavit.

Stated simply, Lt. Ray was an impressive and credible witness who answered honestly, gave ground when necessary, and struck the Court as a seasoned jail employee with no ax to grind – a person who is proud of her job and takes her responsibilities (as a shift commander, as a supervisor, and as a notary) seriously.

The Court finds it absolutely incredible that she would sign an affidavit agreeing that one of her officers used excessive force against Shauntez Hairston. Plus, the record is undisputed that Lt. Ray was *not even present* at the St. Clair County Courthouse when the June 2007 incident in question (the alleged use of excessive force) took place, making it further unlikely that she would sign an affidavit characterizing

---

[2] The words "I, Lieutenant Regina Ray" also appear in the body of the document, the portion of the sheet which was presented to Lt. Ray for notarization. The Court is not troubled by the fact Ray did not notice those words. Ray testified that she typically does not read the body of the documents she notarizes. Her function as a notary is only to verify the signature – *not* to proofread or place her imprimatur on the *contents* of the document.

Milton's use of force, since she lacked firsthand knowledge.

At the hearing, Hairston tried to explain this all away, for instance, stating that the apparent tear mark on the document resulted from his having to use a sheet of paper that already had writing on it unrelated to this case. There may be a reasonable explanation for the fact a torn piece of paper was used for the "affidavit." Perhaps Hairston, short on blank paper, ripped off part of a page on which he previously had written something. But this does not square with the remaining facts or testimony here, which plainly reveal the following sequence of events.

Hairston prepared (handwrote) a document that included the statement about Milton's use of excessive force. That statement was presented to Lt. Ray to be notarized.[3] Ray notarized Hairston's signature (which was at the bottom of the page). When the document was returned to Hairston, he tore off the bottom portion of the document, removing his own signature, after which he added the word AFFIANT below Lt. Ray's notary seal and signature. Through this scheme, Hairston made Ray's notary seal/signature block look like her signature on an *affidavit*, thus concocting a document including Ray's attestation that excessive force was used against Hairston.

---

[3] It is unclear whether Ray personally witnessed Hairston sign the document or whether another correctional officer witnessed the signature and presented it to Ray to notarize. Testimony at the 1/22/10 hearing disclosed that sometimes the latter course was taken (likely due to security concerns surrounding inmate movement), when it was not possible for an inmate or detainee to personally appear at Ray's office for notary services.

The resulting document/false affidavit was produced in discovery, and Ray was to be called at the February 1st trial, listed on both parties' witness lists (already part of the Court record, via the Final Pretrial Order entered on September 9, 2009 at Doc. 69). There is no doubt that Plaintiff Hairston attempted to (and would continue at trial to) use the Ray Affidavit as evidence supporting his position on the ultimate issue in the case.

The witness testimony at the January 22nd hearing was diametrically opposed. Ray's testimony is consistent with the facts and believable. Hairston's testimony contradicts the record before the Court and is not at all believable. There is no innocent explanation for altering and submitting the Ray Affidavit. Hairston, a seasoned litigant, knew precisely what he was doing and gambled that he would get away with it. That was a bad bet.

Dismissal of a lawsuit is an extreme sanction, one that must be exercised with great restraint. In fact, neither this Judge nor his staff can recall a single other instance when the undersigned has imposed this sanction during his nearly ten years on the bench. But the Court has a duty to safeguard the integrity of judicial proceedings, and dismissal is warranted where needed to sanction conduct that abuses the judicial process.

This Court has the inherent power to dismiss an action when a litigant has "willfully abused the judicial process or otherwise conducted litigation in bad faith." *Salmeron v. Enterprise Recovery Systems, Inc.*, **579 F.3d 787, 793 (7th Cir. 2009),**

*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991), *Maynard v. Nygren*, 332 F.3d 462, 470-71 (7th Cir. 2003). *See also Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008).

In the instant case, the undersigned Judge finds that no other sanction will protect the integrity of the judicial system/process, reprimand the offender (Hairston), and "deter future parties" from similar conduct. **Salmeron, 579 F.3d at 797.** And, as defense counsel correctly noted, a monetary sanction would have no practical impact on Mr. Hairston, who is detained and indigent.

For all these reasons, based on Plaintiff Hairston's fraudulent and bad faith conduct in connection with the witness affidavit, and grounded on the Court's inherent power to impose sanctions based on abuse of the judicial process, the undersigned Judge **GRANTS** Defendant's motion for sanctions (Doc. 110) and **DISMISSES this lawsuit with prejudice**. The Court declines to award fees and costs sought by defense counsel herein. This action is dismissed, and judgment shall enter accordingly.

The Court thanks Plaintiff's counsel, Stephen D. Smith (and his associate, Ms. Lyles), for the excellent pro bono services provided to Mr. Hairston. They are DISCHARGED AS COUNSEL herein.

Finally, the Court ADVISES Mr. Smith that he may request reimbursement of recoverable out-of-pocket expenses by submitting a completed and itemized "Authorization for Reimbursement" form. The form can be found on this Court's website – www.ilsd.uscourts.gov – using the "FORMS & ADMIN ORDERS" link on the drop-down

menu on the left side of the home page.  Questions regarding the submission of this form may be addressed to the Clerk's Office at 618-482-9371.

IT IS SO ORDERED.

DATED January 25, 2010.

                                              s/ Michael J. Reagan
                                              MICHAEL J. REAGAN
                                              United States District Judge